Benjamin J. Checkoway, Rebecca Checkoway v. Commissioner.
Checkoway v. Commissioner
Docket No. 59839.
United States Tax Court
T.C. Memo 1960-211; 1960 Tax Ct. Memo LEXIS 79; 19 T.C.M. (CCH) 1174; T.C.M. (RIA) 60211; October 6, 1960
Manuel Katz, Esq., for the petitioners. Raymond T. Mahon, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax as follows: *80 Deficiencies
Additions to Tax
in Income
Sec. 294
Sec. 294
Year
Tax
Sec. 293(b)
Sec. 291(a)
(d)(1)(A)
(d)(2)
1947
$ 2,263.25
$1,131.63
1948
8,146.28
4,073.14
1949
424.00
212.00
1950
383.16
191.58
$ 95.79
1951
13,671.08
6,795.04
3,397.52
$1,223.10
$820.25 Respondent has conceded the additions to tax under section 291(a) of the Internal Revenue Code of 1939, [1] for the years 1950 and 1951, and under section 294(d)(2) for the year 1951. The issues are: (1) Whether petitioners understated their income from sales of scrap and waste materials in the years 1947, 1948 and 1951, and from sales of livestock in the years 1947 through 1951; (2) Whether petitioners are entitled to a casualty loss deduction in 1948 due to the collapse of a barn; (3) Whether a part of the deficiency for each of the years 1947 through 1951 is due to fraud with intent to evade tax; and (4) Whether petitioners are liable for additions to tax under section 294(d)(1)(A) for the year 1951. Findings of Fact Some of the facts have *81 been stipulated and they are herein incorporated by this reference. Benjamin J. and Rebecca Checkoway, husband and wife, are residents of Newburyport, Massachusetts. Benjamin, hereinafter called the petitioner, filed individual Federal income tax returns for the years 1947, 1949, 1950 and 1951 and he filed a joint return with his wife for the year 1948, with the then collector of internal revenue for the district of Massachusetts. During the years 1947 through 1951 petitioner was in the business of selling scrap and waste materials. It is stipulated that petitioner had cash receipts from the sale of scrap and waste materials in 1947, 1948 and 1951 in the amounts of $28,924.25, $39,265.86 and $71,255.75, respectively. Petitioner reported in his Federal income tax returns total receipts from the sale of scrap and waste materials in the amounts of $19,325.25, $26,947.50 and $39,569, respectively. Petitioner's returns for 1947, 1948 and 1951 show a net profit from the sale of scrap and waste materials in the amounts of $4,265.96, $8,120.70 and $5,584.15, respectively. During the years 1947 through 1951 petitioner was in the dairy business and in the business of selling livestock. *82 It is stipulated that petitioner had cash receipts from the sale of livestock in 1947, 1948, 1949, 1950 and 1951 in the amounts of $177.75, $12,779.71, $4,085.14, $9,286.72 and $8,925.02, respectively. Petitioner did not report any receipts from livestock sales in his Federa income tax returns for the years 1947, 1949 and 1951, or in the return filed jointly with his wife for 1948. In petitioner's return for the year 1950 he reported gross sales of $4,500 for 28 cows with a cost basis of $4,000, for a profit of $500. Petitioner reported the following amounts in his income tax returns for 1947 through 1951 in the schedule of farm income and expenses: Year
Sales of milk
Expenses
1947
$ 4,848.65
$ 6,952.00
1948
8,069.84
10,292.00
1949
8,212.06
12,312.00
1950
8,319.48
14,555.00
1951
10,195.05
14,532.87
In 1948 petitioner rented a post office box in Rowley, Massachusetts, under the name of H. Willer. In the latter part of 1948 the petitioner mailed several invoices to United Distillers of America, Inc. covering sales of copper tubing, steel pipe, paint and valves for a total amount of $2,176.19. The invoices were under the name of H. Willer, P.O. *83 Box 100, Rowley, Massachusetts. In November and December 1948 United Distillers of America, Inc. issued five checks totalling $2,176.19, payable to "H. Willer". It has been stipulated that four of these checks, in the amount of $1,739.57, were deposited in petitioner's checking account at the New Hampshire National Bank, Portsmouth, New Hampshire. Petitioner was indicted in 1954 on two counts for violation of section 145(b) in the years 1947 and 1948. Petitioner pleaded guilty to count one, involving the year 1947, and he was convicted under that count and sentenced to two months in prison and a fine of $5,000. Petitioner claimed a casualty loss deduction of $9,000 in 1948 due to the collapse of a barn which had been built by him about 1938 on property in Newburyport, Massachusetts. Respondent disallowed the deduction on the grounds that the amount of the loss was unsubstantiated and that the loss was not the result from a casualty within the meaning of section 23(e)(3). Respondent in his determination of deficiencies made a number of adjustments in each of the years involved. Petitioner in his petition assigns as error only those adjustments pertaining to respondent's failure *84 to allow any cost of goods sold with respect to scrap and livestock sales and failure to allow the casualty loss. A part of the deficiency for each of the years 1947 through 1951 was due to fraud with intent to evade tax. Opinion A comparison of the petitioner's cash receipts from sale of scrap and waste materials in 1947, 1948 and 1951, which are stipulated, with the amounts reported by petitioner in his income tax returns from such sales reveals understatements of sales in those years in the amounts of $9,599, $12,318.36 and $31,686.75. Also, in 1948 the petitioner sold tubing, pipe, paint and valves in the total amount of $2,176.19 under invoices made out in the name of "H. Willer". The customer issued five checks totalling $2,176.19, payable to "H. Willer", and mailed them to a post office box which had previously been rented by petitioner. Petitioner admitted endorsing the name of "H. Willer" on four of the checks, which are in evidence ( $498, $436.82, $365, $436.62) and that he either deposited or cashed them. It is also stipulated that four of the checks ($439.75, $498, $436.82 and $365) were deposited in petitioner's checking account in a Portsmouth, New Hampshire bank. *85 We are convinced that these were petitioner's own sales in 1948 and that this was merely a scheme to conceal a portion of his receipts from the sale of scrap and waste material for that year. Petitioner's story that this material actually belonged to one H. Willer and that he had authority to sign Willer's name is completely unsubstantiated, and we give no credence to it. The evidence indicates clearly that these sales were made by petitioner and that the receipts were treated by him as his own. Petitioner alleges in his petition that the respondent failed to allow the deduction of expenses and cost of goods sold from the unreported sales of scrap and waste materials in 1947, 1948 and 1951. Apart from this bare assertion, the petitioner offers the Court no amounts to be allowed as deductions either at the trial or on brief. In fact, his entire argument on brief as to these deductions is as follows: Even though it was impossible to tell, because of an absence of any items or details, how much petitioner had in fact spent in cash for purchases and other deductible expenses connected with the junk business, it is evident that considerable amounts were spent by him in cash for such *86 purposes. As a result some allowance should be made for such expenses, * * *. There are no books and records in evidence and at no time were any books and records made available by petitioner to the respondent. Nor was any other satisfactory evidence produced by petitioner on this point. An examination of petitioner's income tax returns for the years 1947, 1948 and 1951 shows that petitioner claimed the following deductions from his reported receipts from the sale of scrap and waste materials: Cost of
Other
Year
Goods Sold
Deductions
1947
$14,086.10
$ 973.19
1948
17,006.42
1,820.38
1951
33,366.00
618.85 Respondent allowed these deductions in full. Petitioner has not established that he is entitled to any additional deductions from the unreported receipts of scrap and waste material sales. On the basis of this record we are justified in accepting as correct the petitioner's deductions for cost of goods sold and other expenses in his scrap business, as reported by him in his returns. Petitioner similarly alleges in his petition that respondent failed to allow any deductions for cost of goods sold and other expenses from the unreported sales of livestock *87 in 1948, 1949, 1950 and 1951. No allegation is made for 1947 and, therefore, the question of deductions from livestock receipts is not before us for that year. [2] Again, for the other years, we are met with the same difficulties as above. The absence of books and records, as well as the dearth of any satisfactory evidence at the trial hampers any effort to decide this question. It is stipulated that petitioner's receipts from livestock sales in 1948, 1949, 1950 and 1951 were $12,779.71, $4,085.14, $9,286.72 and $8,925.02, respectively. Except for 1950 none of these receipts were reported by petitioner in his income tax returns. In 1950 the petitioner reported sales of livestock of $4,500, with a cost basis of $4,000. To establish cost of sales of livestock in the years 1948 through 1951 the petitioner introduced checks for those years and merely testified that they were in payment for cows purchased by him. These checks, including occasional receipts for cash, show payments of $8,832, $4,989.21, $1,945 and $3,215.35 for the years 1948 through 1951, respectively. Certainly the petitioner cannot seriously argue that all these payments represent cost of goods sold for the livestock which *88 was sold and not reported. Petitioner was engaged in the dairy business during these years and he admitted that he purchased cows for such business. Petitioner's livestock sales for 1947 were stipulated to be $177.75 and yet the checks introduced in evidence by petitioner for that year as representing purchases of cows are in the amount of $3,751, which certainly permits an inference that a substantial portion of the checks was for purchases of cows to be used in the dairy business. Also, an examination of petitioner's income tax returns for the years 1948 through 1951 shows that he claimed expenses from his farm operations of $10,292, $12,312, $14,555 and $14,532.87, respectively, while the receipts from the farm, representing the sale of milk, were $8,069.84, $8,212.06, $8,319.48 and $10,195.05. For all we know these amounts of farm expenses may well include purchases of livestock. It is also conceivable, and in fact it is indicated by the evidence, that petitioner raised some of the livestock for sale rather than purchase it for resale. We believe, however, that some amounts should be allowed as deductions for costs of goods sold and other expenses from the unreported sales of livestock *89 in 1948, 1949 and 1951, and bearing heavily upon the petitioner, whose inexactitude is of his own making, we hold that these amounts are $3,000, $1,000 and $2,000, respectively. Cohan v. Commissioner, 39 F.2d 540. We have seen that petitioner's income tax return for 1950 shows a cost of goods sold of $4,000 for livestock sales of $4,500. We have not been shown, nor are we convinced, that petitioner is entitled to any additional amounts to be deducted from sales of livestock as cost of goods sold or other expenses for that year. [3]
Petitioner claimed a casualty loss deduction of $9,000 in the 1948 income tax return as a result of the collapse of a barn early in that year, purportedly from heavy snowstorms. Respondent disallowed this deduction with the explanation in the notice of deficiency that the amount was unsubstantiated and also because the *90 barn collapse was "not because of storm or other casualty". We agree with respondent. Petitioner has failed to substantiate the amount claimed as a loss. There is evidence that the barn was built about 1938 on property in Newburyport, Massachusetts. No evidence appears in the record as to the cost or adjusted cost basis of this barn or of its value immediately preceding the collapse. In a list of petitioner's assets over the years 1946 through 1951, submitted in evidence by him, there is an item "Newburyport Farm Bldgs. & Land 1938" listed at $9,000. Petitioner does not explain why he is claiming the entire amount for a collapse of one of the buildings on this property. Nothing else appears in the record, and absent any evidence, we believe the loss must be disallowed as unsubstantiated. The next issue is whether any part of the deficiency for each of the years 1947 through 1951 is due to fraud with intent to evade tax. Respondent has the burden of proving fraud and he must do so with clear and convincing evidence. Arlette Coat Co., 14 T.C. 751. Petitioner told contradictory stories about the existence of books and records, insisting at first that there were no records *91 and later stating that such records were destroyed. It is stipulated that petitioner had cash receipts from livestock sales in 1947 through 1951, and the evidence shows that petitioner's income tax returns for each of those years, except for 1950, failed to show any such receipts. Even in 1950, when petitioner reported livestock sales of $4,500, the stipulation shows that he had cash receipts in that year from livestock sales of more than $9,000. A comparison of petitioner's stipulated cash receipts from scrap sales in 1947, 1948 and 1951 with the amounts of such sales reported by petitioner in the income tax returns for those years shows understatements of $9,599, $12,318.36 and $31,686.75 in those respective years. Petitioner offers us no satisfactory explanation of these substantial omissions, and we think it is highly unlikely that he was unaware of them. The words "none" or "none claimed" appear in petitioner's income tax returns for 1947, 1948, 1949 and 1951 in the spaces designated for livestock sales. It also appears from the evidence and from the stipulations that petitioner sold pipe, tubing and paint in 1948 under the name of H. Willer; that he rented a post office box under *92 that name for receiving checks on such sales and that he endorsed the name of H. Willer on the checks and either deposited or cashed such checks. There is also the pattern followed by petitioner over these years of cashing checks in substantial amounts, received in his various sales activities, and then depositing such amounts in two out-of-state banks. Also, petitioner's conviction of criminal tax evasion for 1947 is evidence of fraud. Madeline v. Smith, 32 T.C. 985. We are convinced from a review of all the evidence that a part of the deficiency for each of the years 1947 through 1951 was due to fraud with the intent to evade tax, and we so hold. The next issue is whether petitioner is liable for additions to tax in 1951 under section 294(d)(1)(A) due to his failure to file a declaration of estimated tax for that year. Petitioner introduced no evidence to show that such failure to file was "due to reasonable cause and not to willful neglect." We sustain the respondent on this issue. Petitioner raises the statute of limitations issue for the first time on brief as to the years 1949 and 1950. The statute of limitations is an affirmative defense which must be specially *93 pleaded, and since petitioner has not done so, he may not rely upon this defense here. The issue is not properly before us. In any event, even if such issue were before this Court, it is clear from the record that petitioner's returns for the years 1949 and 1950 were false or fraudulent with intent to evade tax and consequently the statute of limitations would not apply. Section 276(a). Decision will be entered under Rule 50. Footnotes
1. All section references will be to the Internal Revenue Code of 1939, as amended, unless otherwise noted.↩
2. It is stipulated that the livestock receipts for that year were $177.75. ↩
3. It is significant that the checks introduced by petitioner in evidence to show purchases of cows for 1950 and up to a total of only $1,945, which is to be compared with the $4,000 carried by him on his 1950 return as cost of livestock sold.↩